LISA J. DAMIANI (CSB#137968)
DAMIANI LAW GROUP APC
1059 10th Ave.
San Diego, California 92101
ljdamiani@damianilawgroup.com
Tel. (619) 239-0170
Fax. (619) 239-0216

Attorneys for Plaintiff, FRANCISCO ROMERO

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCISCO ROMERO,<br><br>         Plaintiff,<br><br>vs.<br><br>ATTORNEY GENERAL MERRICK B. GARLAND, AND DOES 1-10,<br><br>         Defendants. | CASE NO. 3:19-cv-02138-JAH-WVG<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES:**<br>(1) DISABILITY DISCRIMINATON<br>(2) HARASSMENT BASED ON DISABILITY<br>(3) RETALIATION<br><br>**JURY TRIAL DEMAND** |

Plaintiff, Francisco Romero, by and through counsel, alleges the following:

**JURISDICTION AND VENUE**

1. This action arises out of acts, representations and events occurring within the jurisdiction of the County of San Diego and the Southern District of California. Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because Defendants maintained facilities and business operations in this District and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

2. This lawsuit arises under the laws of the United States, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 (Title VII), 29 C.F.R. § 1614.101 (a) (b), Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008 (ADAAA or Amendments Act), 42 U.S.C. § 12101 et seq., and the

1 Rehabilitation Act, 29 U.S.C. § 791, and is for money damages for discriminatory and
2 retaliatory conduct of the Federal Bureau of Prisons and its agents and employees.
3 Subject matter jurisdiction arises under 28 U.S.C. § 1331.
4     3. The relief Plaintiff seeks is within this Court's power to grant.

## EXHUASTION OF ADMINISTRATIVE REMEDIES

6     4. Plaintiff has met all procedural requirements for filing this Complaint.
7 Plaintiff has exhausted his administrative remedies, to wit: a formal charge of
8 employment discrimination has been filed with Defendant on October 17, 2017 (EEO
9 Complaint No. BOP-2017-01139); after an investigative report dated April 13, 2018,
10 Plaintiff was given the right to request from Defendant a Final Agency Decision
11 ("FAD"); on May 11, 2018, Plaintiff requested a FAD. On September 6, 2019, Plaintiff
12 received a FAD allowing him to file a federal civil action within 90 days. Thus, Plaintiff
13 has exhausted his administrative remedies regarding this Complaint.

## PARTIES

15     5. Plaintiff is a United States citizen with a disability, and at all times relevant
16 to this lawsuit was domiciled in San Diego, within the Southern District of California.
17 He was employed by the United States Department of Justice (DOJ), Bureau of Prisons
18 (BOP), as an Engineering Technician, assigned to MCC San Diego ("THE FACILITY").
19 Plaintiff has been employed in his position since October 2002 and with the BOP since
20 June 1991.
21     6. Defendant Attorney General Merrick B. Garland, sued herein in his official
22 capacity, is the head of the DOJ, the parent agency of the BOP, and at all times relevant
23 to this lawsuit was responsible for the actions of the BOP employees acting within the
24 course and scope of their employment in the Southern District of California.
25     7. True names or capacities, whether individual, corporate, associate or
26 otherwise, of defendants named herein as DOES 1 through 10 are unknown to Plaintiff,
27 who therefore sues said defendants by said fictitious names. Plaintiff will amend this
28 complaint to show said defendants' true names and capacities when the same have been

1  ascertained. Plaintiff is informed and believes and thereon alleges that all defendants
2  sued herein as DOES are in some manner responsible for the acts and injuries alleged
3  herein.

4        8.     Plaintiff is informed and believes, and thereon alleges, that, at all times
5  relevant hereto, Defendants were each the agents and/or employees of each other, and in
6  doing the things alleged, were acting within the scope of their authority, agency, joint
7  venture, and/or employment and with the permission of each other. Plaintiff is informed
8  and believes that Defendants were each responsible in some way for the harms alleged
9  herein.

10         **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11       9.     As far back as 2012, Plaintiff is informed and believes and thereon alleges,
12 Defendants knew that THE FACILITY was contaminated with mold, which presented
13 health hazards to persons employed, housed and visiting there. Plaintiff worked in the
14 facility every work day for many years; and in May 2015, Plaintiff became severely ill
15 due to toxic mold exposure. He experienced debilitating dizziness, vertigo, vomiting,
16 coughing and memory loss. The symptoms were so severe that he had to take a medical
17 leave of absence and was out from work for several weeks. Exposure to mold would
18 cause him to experience the same debilitating symptoms that would prevent him from
19 being able to perform the job that he had been performing competently for over 13 years.

20       10.    In June and July 2015, mold kits and tests done by an independent
21 contractor confirmed that there was mold at the facility and that spores were in the air.
22 Plaintiff, who had worked in the basement, had to move to the first floor because he was
23 continuing to get sick from the mold.

24       11.    In August 2015, Plaintiff's doctor diagnosed Plaintiff with a physical
25 respiratory disability caused from exposure to the mold. His doctor required him to
26 remain in an area that was not infected with mold and recommended Plaintiff remain on
27 the first floor, where he was told there was no mold. Plaintiff worked out of a conference
28 room, which was locked every day that Plaintiff arrived. He would sometimes have to

1   wait in excess of one hour before someone would open the door for him.  In addition,
2   this conference room is often a place where troublemakers are taken for reprimanding,
3   and as such, Plaintiff was stigmatized by some of his coworkers.
4           12.     Defendants discriminated and retaliated against Plaintiff because of his
5   disability and because of his requests for accommodation.  He was isolated and shunned
6   by his department.  He was excluded from meetings, interoffice emails and was kept on
7   a "need-to-know" basis for most aspects of the facility.  In addition, co-workers began to
8   act strangely towards him, staring him down as they passed him without saying a word,
9   or glaring at him when standing in his vicinity. Upper management minimized his
10  disability, treating Plaintiff as if he was making it all up. They made it clear to all other
11  employees who came in contact with Plaintiff that he was viewed as a troublemaker and
12  complainer; and, those who aligned themselves with Plaintiff would experience the same
13  treatment.
14          13.     Those who discriminated and retaliated against him included his direct
15  supervisor, the Warden and his staff, and even the Human Resource Manager.  These
16  employees were each aware of Plaintiff's disability and requests for accommodation, and
17  as of today have not complied with his reasonable requests. Plaintiff experienced this
18  treatment on a daily basis for over a year.
19          14.     While working on the first floor of the facility, Plaintiff began
20  experiencing the same symptoms he had previously suffered from the toxic mold when
21  he worked in the basement.  Plaintiff therefore requested that his managers test the first-
22  floor area for toxic mold.  The managers denied his request, saying they would not
23  perform any more testing and that he would have to deal with it.  His symptoms became
24  worse and he was forced to take another leave of absence. Plaintiff is currently not
25  working at the facility, and has been out of work since around October 18, 2016. Months
26  after being away from the facility, Plaintiff had been cleared to return to work and his
27  doctors stated that he could return to work, however, he must not be exposed to toxic
28  mold.

15. Plaintiff has requested accommodation to work in a safe environment, including an office outside and away from the facility in another government owned building nearby. Plaintiff made his first request for accommodation in October of 2016. Defendants refuse to take him back in his position and engage in an interactive process related to accommodating his disability. Defendants falsely claimed the facility was free of mold and that Plaintiff could return to work without being exposed to mold. However, defendants refused to and failed to provide any documentation to support the claim that the facility was free of mold.

16. On May 18, 2016, after inspecting the building, the Occupational Safety and Health Administration (OSHA) confirmed that black and other molds were present throughout the facility. On October 25, 2016, the U.S. Department of Labor (DOL) issued a Notice of Unsafe or Unhealthful Working Conditions to the facility. Other employees and possibly inmates and other members of the public have been affected by the mold infestation. Despite numerous complaints and demands for remediation of the mold from numerous people, including representatives from OSHA and Plaintiff's Union, Defendants have failed and continue to fail to remediate the mold problem and accommodate Plaintiff's disability related to his severe reaction to mold.

17. Moreover, there is significant evidence that the facility is still contaminated with mold and other employees have been injured similarly to Plaintiff.

18. Defendants have falsely represented to OSHA and others that they instituted a plan to remediate the mold problem at the facility and that the remediation would be completed by November 2016.

19. Plaintiff filed a complaint with both the Office of Special Counsel ("OSC") and the Equal Employment Opportunity (EEO) counselor. The OSC failed to act, stating that the matter should be dealt with through the EEO process, and closed its investigation. Plaintiff's EEO counselor informed Plaintiff that Defendants were not willing to provide Plaintiff with accommodations for his severe reaction to the mold. Plaintiff then filed a formal complaint.

1  20. Under the BOP Anti-Discrimination Policies, Defendants claim that
2 Disability Discrimination is not tolerated. It states in pertinent part that "[m]anagement
3 must make reasonable accommodation to the known physical or mental limitations of
4 qualified applicants or employees with disabilities, unless the accommodation would
5 impose an undue hardship upon the BOP."  In addition, in the same policies, it states in
6 pertinent part that "BOP supervisors and management officials must not retaliate against
7 applicants or employees in any aspect of employment because they filed an EEO
8 complaint, because they complained to the BOP about discrimination on the job, or
9 because they otherwise participated in the EEO process."
10  21. Under the BOP Reasonable Accommodation Program, Plaintiff and his
11 supervisors were supposed to begin an "interactive and flexible process between the
12 employee and supervisor in order to identify an effective accommodation." This
13 interactive process includes:
14  a. An analysis of the particular job to determine its purpose and essential
15  functions.
16  b. A consultation with the employee to ascertain the precise job-related
17  limitations imposed by the individual's disability and how those
18  limitations could be overcome with a reasonable accommodation.
19  c. An identification of potential accommodations and, in conjunction
20  with the employee, an assessment of the effectiveness of those
21  accommodations in enabling the employee to perform the essential
22  functions of the job.
23  d. Consideration of the preference of the employee and selection and
24  implementation of the accommodation that is appropriate to meet the
25  needs of the employee and the Bureau.
26  22. According to the Reasonable Accommodation Program policies,
27 "[d]epending on the individual circumstances, reasonable accommodations may include,
28 but are not limited to, modifications to the application of Bureau policies, modifications

to the work environment, providing equipment and assistive devices, and reassignments." In addition, "[t]he accommodation need not be the most expensive, nor must it be exactly what the individual requests, but it must be effective in assisting an individual in performing the essential functions of the position."

23. Plaintiff has requested reasonable accommodations to return to work at the BOP, all of which seem to be explicitly mentioned by the Reasonable Accommodation Program as possible remedial measures:

    a. Plaintiff has simply requested that he be allowed to work in a healthy environment, a place within the facility that is free of mold.

    b. In the alternative, Plaintiff requested that he be allowed to return to work in a healthy environment, a place outside, but near, the facility.

    c. In the alternative, Plaintiff requested that he be reassigned to a comparable position within the BOP.

24. Defendants have refused to engage in a good faith interactive process with Plaintiff. In stark contrast to the written policies, Defendants simply told Plaintiff that "the interactive process related to Mr. Romero's reasonable accommodation has concluded."

## FIRST CAUSE OF ACTION
## (DISABILITY DISCRIMINATION)

25. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in each and every paragraph above.

26. Plaintiff, who was an employee of Defendants, suffers from a physical respiratory disability, caused by exposure to toxic mold in his workplace, the facility.

27. Plaintiff's physical disability caused him to suffer debilitating dizziness, vertigo, vomiting, coughing and memory loss. Plaintiff's physical disability substantially limited one or more major life activities, including performing manual tasks, walking, standing, breathing, concentrating, thinking, and working.

28. Defendants knew that Plaintiff had a physical respiratory disability and

1    treated him differently from other similarly situated employees who were not so disabled
2    by isolating him, shunning him, excluding him from meetings, interoffice emails and
3    kept him on a "need-to-know" basis for most aspects of the facility.
4        29.    Moreover, when the toxic mold began to affect Plaintiff on the first floor
5    of the facility and Plaintiff requested that Defendants test the area for mold, Defendants
6    refused to do so, knowing that Plaintiff would suffer and allowed Plaintiff to suffer from
7    his debilitating symptoms. Despite Plaintiff's doctor's note, stating that Plaintiff could
8    not be exposed to mold, the Associate Warden continuously asked Plaintiff if he was
9    ready to move back to the basement. Plaintiff was eventually told that he would be
10   moved back to the basement, where it was not safe for him to return due to the
11   significant amount of mold in the Facility.
12       30.    Plaintiff was qualified as, and able to perform the essential functions of, an
13   Engineering Technician, GS-11, as he had done for many years, with a reasonable
14   accommodation.
15       31.    Once Plaintiff was medically cleared to return to work in his position,
16   Defendants failed to reinstate him in his position because of his physical disability.
17       32.    Plaintiff's physical disability was a substantial motivating reason for
18   Defendants' discriminatory treatment and failure to reinstate him in his position.
19       33.    Plaintiff at various times requested that Defendants make reasonable
20   accommodations for his physical disability so that he would be able to continue to
21   perform the essential job requirements of an Engineering Technician, GS-11.
22       34.    Plaintiff was willing to participate in an interactive process and attempted
23   to engage Defendants in an interactive process.
24       35.    Defendant was aware of Plaintiff's need for an accommodation for his
25   physical disability and Plaintiff's numerous requests for accommodation and failed to
26   participate in a timely good-faith interactive process with Plaintiff to determine whether
27   reasonable accommodation could be made.
28       36.    Defendant was aware of Plaintiff's need for an accommodation for his

1  physical disability and Plaintiff's numerous requests for accommodation and failed to
2  provide Plaintiff with a reasonable accommodation for Plaintiff's physical disability.
3       37.     As a result of Defendants' discriminatory actions against Plaintiff, Plaintiff
4  was harmed in that he has suffered and continues to suffer lost wages and other
5  employment benefits, including but not limited to pension funds, emotional distress and
6  other related damages, and attorney's fees and costs to seek redress for the harm caused,
7  all in an amount to be proven at the time of trial on the instant matter. Defendants'
8  conduct was a substantial factor in causing Plaintiff's harm as alleged herein.

## SECOND CAUSE OF ACTION
## (HARASSMENT BASED ON DISABILITY)

11       38.     Plaintiff incorporates by reference as if fully set forth herein the allegations
12  contained in each and every paragraph above.
13       39.     Defendants harassed Plaintiff on a daily basis after becoming aware of
14  Plaintiff's physical respiratory disability and his complaints that Defendants failed to
15  take any actions to protect him in the workplace. Defendants isolated Plaintiff, shunning
16  him and excluding him from meetings, interoffice emails and other important job
17  requirements.  In addition, Defendants encouraged co-workers to treat Plaintiff
18  differently. Defendants placed Plaintiff in a room known for the placement of
19  troublemakers and disciplined employees. As a result, his coworkers treated him as if he
20  was a criminal. They stared him down as they passed him without saying a word, or
21  glared at him when standing in his vicinity.
22       40.     Moreover, upper management minimized his disability and acted as if
23  Plaintiff was making it all up. They lied about the mold and made it clear to all other
24  employees who came in contact with Plaintiff that he was viewed as a troublemaker,
25  complainer and exaggerator; and, those who aligned themselves with Plaintiff would
26  experience the same bad treatment or lose their jobs.
27       41.     Moreover, when the toxic mold began to affect Plaintiff on the first floor
28  of the facility and Plaintiff requested that Defendants test the area for mold, Defendants

1    refused to do so, knowing that Plaintiff would suffer and allowed Plaintiff to suffer from
2    his debilitating symptoms. Despite Plaintiff's doctor's note, stating that Plaintiff could
3    not be exposed to mold, the Associate Warden continuously harassed Plaintiff by telling
4    him that he would be moved back to the basement, where the mold infestation was
5    significant and where Plaintiff first developed his symptoms. Plaintiff was threatened by
6    the Associate Warden because he knew that it was not safe for him to return to the
7    basement.  Defendants were trying to force Plaintiff out.

8         42.    Defendants knew that Plaintiff had a physical respiratory disability;
9    however, Defendants did not treat it as a legitimate disability and acted as if Plaintiff was
10   making it up. They treated him differently in the workplace, causing him to remain in a
11   hostile work environment until it became so unbearable, he was forced to take a leave of
12   absence. Defendants lied about the condition of the Facility, claiming there was no mold.
13   In fact, the Facility was infested with mold that was causing physical injuries to Plaintiff
14   and others.

15        43.    Additionally, Defendants threatened Plaintiff's job. Rather than attempt to
16   find a reasonable accommodation for his disability, as required by law, they demanded
17   that he return to the toxic environment or abandon his position with the Agency. At one
18   point, Plaintiff was told that he was going to be terminated from his position.

19        44.    Plaintiff's physical disability was a substantial motivating reason for
20   Defendants' discriminatory treatment and harassment.

21        45.     As a result of Defendants' harassing conduct against Plaintiff, Plaintiff
22   was harmed in that he has suffered and continues to suffer lost wages and other
23   employment benefits, including but not limited to pension funds, emotional distress and
24   other related damages, and attorney's fees and costs to seek redress for the harm caused,
25   all in an amount to be proven at the time of trial on the instant matter. Defendants'
26   conduct was a substantial factor in causing Plaintiff's harm as alleged herein.
27   / / /
28   / / /

# THIRD CAUSE OF ACTION
## (RETALIATION)

46. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in each and every paragraph above.

47. Plaintiff engaged in a protected activity when he requested Defendant engage in an interactive process to determine what reasonable accommodation could be made to have him continue in his position as an Engineering Technician. Plaintiff made specific requests for accommodation, such as that he be placed in a safe environment to perform his job so that he would not become ill from toxic mold exposure. Moreover, Plaintiff complained to the EEO counselor about the discriminatory treatment and the OSC about the Agency's failure to remediate the mold.

48. Immediately after Plaintiff engaged in the protected activity, Defendants subjected Plaintiff to adverse employment actions in that they isolated him, treated him as if he was fabricating his disability and made his work environment unbearable. Defendant refused to engage in a good faith interactive process and lied about the mold remediation. Plaintiff was told not to complain and was given jobs that were outside his work duties, which included washing cars, painting the front lobby and moving benches. Plaintiff was not asked to perform such duties until he requested accommodation for his disability, complained to his EEO counselor and the OSC, and was moved to the 1st floor. Defendant has subjected Plaintiff to a continuing violation of his rights by subjecting him to the treatment complained of herein. Ultimately, Defendants retaliatory actions forced Plaintiff to take a leave of absence. Defendants then failed to reinstate him in his position.

49. Plaintiff was subjected to these adverse employment actions because of his participation in the protected activity of requesting to work in a safe environment, free of mold and other accommodations for his physical disability, as well as for filing his EEO complaint and complaint to the OSC.

50. As a result of Defendants' retaliatory actions, Plaintiff was harmed in that

he has suffered and continues to suffer lost wages and other employment benefits, including but not limited to pension funds, emotional distress and other related damages, and attorney's fees and costs to seek redress for the harm caused, all in an amount to be proven at the time of trial on the instant matter. Defendants' conduct was a substantial factor in causing Plaintiff's harm as alleged herein.

51. Defendants have intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. For monetary relief and/or special and economic damages, including lost wages and future lost wages, and other lost employment benefits. Amount to be proven at trial.
2. For general and non-economic damages, including emotional distress and other pain and suffering. Amount to be determined at trial.
3. For compensatory damages for medical expenses incurred for all physical and psychological therapy for emotional distress and related injuries. Amount to be proven at trial.
4. For expectation damages for ongoing and anticipated psychological and psychiatric treatment for emotional distress and related injuries. Amount to be proven at trial.
5. For incidental losses in an amount to be proven at trial.
6. For penalties and prejudgment interest on all damages at the prevailing legal rate.
7. For costs of the suit.
8. For reasonable attorney's fees incurred herein.
9. For such further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues raised in this complaint.

Dated:   June 10, 2021          DAMIANI LAW GROUP, APC


                        By: /s/ *Lisa J. Damiani*
                              Lisa J. Damiani, Esq.
                              Attorney for Plaintiff, FRANCISCO ROMERO